# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE      )
                               )
    v.                      )
                               )     ID Nos. 1807008578A/B
NATHANIEL L. HARMAN,    )
                               )
    Defendant.            )

Date Submitted: October 7, 2022
Date Decided: December 20, 2022

*Upon Defendant Nathaniel Harman's Motion to Withdraw Guilty Plea*
**DENIED.**

## **ORDER**

Samuel B. Kenney, Esquire, Deputy Attorney General, DEPARTMENT OF JUSTICE, 820 North French Street, Wilmington, Delaware, 19801, Attorney for the State of Delaware.

Kimberly A. Price, Esquire, COLLINS & PRICE, 8 East 13th Street, Wilmington, Delaware 19801, Attorney for Defendant Nathaniel Harman.

**WHARTON, J.**

This 20th day of December 2022, upon consideration of Defendant Nathaniel Harman's ("Harman") *pro se* Motion to Withdraw Guilty Plea, Harman's Amended Motion filed by counsel, the State's responses, the affidavit of Andrew Meyer, Esquire, and the record in this case, it appears to the Court that:

1. On September 10, 2018, Harman was indicted in a sixteen-count indictment.[1] He was charged with: Reckless Endangering First Degree (six counts), Possession of a Firearm During the Commission of a Felony (six counts), Wearing a Disguise During the Commission of a Felony (one count), Possession, Ownership, or Control of a Firearm by a Person Prohibited ("PFBPP") (one count), Possession, Ownership, or Control of Ammunition by a Person Prohibited ("PABPP") (one count), and Carrying a Concealed Deadly Weapon (one count).[2] If convicted on all counts, Harman faced a sentence ranging from 23 to 216 years.[3]

2. These charges stem from a July 2018 residential shooting.[4] While six members of a family were in the home at the time, nothing in the record indicates that anyone was physically harmed. There was, however, property damage.[5]

---

[1] D.I. 3 (Unless indicated otherwise, D.I. numbers are from ID No. 1807008578A).
[2] *Id.*.
[3] Def.'s Amend. Mot. to Withdraw Guilty Plea, at 17, D.I. 97.
[4] *Id.* at ¶11; State's Resp. to Def.'s Mot. to Withdraw Guilty Plea, at ℙ 2, D.I. 80.
[5] Affidavit of Probable Cause, App'x to Def.'s Amend. Mot. to Withdraw Guilty Plea, at A33, D.I. 98.

3.	New Castle County Police were able to link Harman to the shooting,[6] charges were filed, and trial was set for December 3, 2019.  Prior to trial, Harman's PFBPP and PABPP charges were severed,[7] he was allowed to proceed *pro se*,[8] and he rejected several plea offers[9] - the last being the day before trial.[10]

4.	On the day of trial, Andrew Meyer, Esquire, Harman's attorney prior to his *pro se* election and who had been named standby counsel, informed the State that Harman was signing the December 2nd plea offer.[11]  That offer, however, was no longer on-the-table.[12]  The State's new offer was the same as the December 2nd offer - one count of PFBPP, two counts of Reckless Endangering First Degree, with a *nolle prosequi* on all remain charges[13] - but with open sentencing.[14]  Harman asked for, and was granted, time to discuss the plea with loved ones.[15]

---

[6] The police were, for example, made aware of the distinctive getaway car, a grey Mazda 3 with a duct-taped sunroof.  Through additional investigations, police were able to link Harman to the Mazda, his girlfriend's vehicle.  Officers then made their way to a complex where the vehicle had been seen and after pulling Harman over in that car, police collected a firearm they found by him.  A firearm identification and toolmark examiner determined that Harman's firearm was used at the residential shooting.  D.I. 80; D.I. 97.

[7] D.I. 22.

[8] D.I. 39.

[9] D.I. 28; D.I. 39; D.I. 45; D.I. 57.

[10] D.I. 57; D.I. 80, at ¶14; D.I. 97, at ¶7.

[11] D.I. 80, at ¶15.

[12] D.I. 80, at ¶15.

[13] Tr., at 2:22–3:2, D.I. 78.

[14] The December 2nd offer included an agreed-upon recommendation of five years at Level V, D.I. 80, at ¶14, ¶16; *see* D.I. 59.

[15] D.I. 80, at ¶18; Tr. at 3:2–11, D.I. 78.

5. After a brief recess, Harman accepted the final plea offer and executed a Plea Agreement and Truth-in-Sentencing Guilty Plea Form.[16] Before conducting the guilty plea colloquy, however, the Court confirmed that Harman no longer wished to proceed *pro se* and that Mr. Meyer was representing him for the plea.[17]

6. Mr. Meyer represented to the Court that he discussed the nuances of the plea and its range of potential consequences with Harman,[18] stated that he "believe(s) Mr. Harman will be entering this plea knowingly, intelligently and voluntarily, and … present[ed] him to the Court."[19]

7. While Harman expressed some confusion during the colloquy,[20] the Court allowed counsel to repeatedly explain what was happening.[21] Harman was also informed again of the minimum mandatory and the maximum penalties he faced[22] as well as the rights he was giving up by pleading guilty.[23] During the

---

[16] D.I. 59.

[17] Tr., at 6:17–8:3, D.I. 78.

[18] *Id.,* at 8:9–9:5, D.I. 78.

[19] *Id.,* at 9:3–5, D.I. 78.

[20] *See* D.I. 97, at ¶22–26

[21] *E.g*., after the Court read a charge (to which he was pleading guilty), Harman stated "[y]eah. That's what I don't want to plead to." But, after discussing with Mr. Meyer, Harman stated that he understood the charge and pleaded guilty. Tr., at 16:10–17:16, D.I. 78.
*E.g*., Tr., at 20:15–21:9, D.I. 78 (the Court clarified that it has the power to sentence him above the recommendations after Harman stated that he did not understand that power. Mr. Meyer then provided further clarification on sentencing.)

[22] *Id.*, at 18:20–19:4, D.I. 78. Meyer discussed these matters with Harman prior to the colloquy. Tr. at 6:8–16.

[23] *Id*., at 12:14–14:2.

colloquy, Harman also denied being threatened or coerced into pleading guilty,[24] and stated that he was satisfied with Mr. Meyer's representation.[25]  Ultimately, "[the Court was] satisfied that there [was] a factual basis for [Harman's] plea and that [his] plea is knowing, intelligent, and voluntary."[26]  The parties requested deferred sentencing, but not a presentence investigation.[27]  Sentencing was tentatively set for January 24, 2020.[28]

8.  After accepting the plea in open court, Harman developed second thoughts and filed a handwritten *pro se* Motion to Withdraw Guilty Plea[29] and a follow-up letter re-asserting his desire to withdraw his plea.[30]  The State filed a response opposing the request.[31]  Harman, through new counsel, then filed an Amended Motion to Withdraw Guilty Plea which included an allegation of ineffective assistance of counsel against Mr. Meyer.[32]  The Court ordered Mr. Meyer to file an affidavit,[33] which he did,[34] and the State filed a response.[35]

---

[24] *Id.*, at 12:5–10.
[25] *Id.,* at 22:14–19.
[26] *Id.,* at 23:4–7.
[27] *Id.,* at 23–24.
[28] *Id.,* at 27:3–8.
[29] D.I. 72.
[30] D.I. 75.
[31] D.I. 80.
[32] D.I. 97.
[33] Order to Expand, D.I. 101
[34] D.I. 105 (also docketed as D.I. 107.)
[35] D.I. 102.

9. While a guilty plea may be withdrawn before sentencing, there is no absolute right to do so.[36] The defendant bears the "substantial" burden of showing "any fair and just reason" for withdrawal.[37] This decision is purely discretionary.[38]

10. To determine whether there is a "fair and just" reason for the withdrawal of a guilty plea, the Court must address the following:

  a) Was there a procedural defect in taking the plea;
  b) Did the defendant knowingly and voluntarily consent to the plea agreement;
  c) Does the defendant presently have a basis to assert legal innocence;
  d) Did the defendant have adequate legal counsel throughout the proceedings; and
  e) Does granting the motion prejudice the State or unduly inconvenience the Court.[39]

The Court does not balance these factors.[40] Instead, "[c]ertain of the factors, standing alone, will themselves justify relief."[41]

11. Harman argues that his counsel was ineffective and that his plea was not entered into knowingly, voluntarily, and intelligently.[42] He also argues that the

---

[36] Del. Crim. R. 32(d); *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005) (internal citations omitted).

[37] *Id.; United States v. Jones*, 336 F.3d 245, 252 (3d. Cir. 2003).

[38] *Id.* ("the court *may* permit withdrawal of the plea") (emphasis added); *State v. Phillips*, 2007 WL 3105749 at *1 (Del. Super. Ct. 2007) (quoting *Brown v. State*, 250 A.2d 503, 504 (Del. 1969)).

[39] *State v. Friend*, 1994 WL 234120, at * 2 (Del. Super. Ct. 1994) (internal citations omitted); *see Scarborough v. State*, 938 A.2d 644, 649 (Del. 2007); *McNeill v. State*, 2002 WL 31477132, at * 1–2 (Del. 2002).

[40] *Patterson v. State*, 684 A.2d 1234, 1239 (Del. 1996).

[41] *Id.*

[42] D.I. 97, at 16–17.

5

State would not be prejudiced if his motion is granted.[43] The State argues that "all of the … factors weigh against permitting the defendant to withdraw his guilty plea."[44] The Court address these factors in turn.

12. **There were no procedural defects in the plea colloquy.** Despite highlighting that "no" is checked for the question "[a]re you satisfied with your lawyer's representation of you, and that your lawyer has fully advised you of your right?"[45] Harman, when questioned directly by the Court, stated that he was satisfied with Mr. Meyer's representation and that Mr. Meyer had fully advised him of his rights.[46] Harman admits that there were no defects in the colloquy.[47] The Court agrees and finds that the "numerous protections" afforded to him were honored.[48]

14. **Harman's plea was entered into knowingly, intelligently, and voluntarily.** In the absence of clear and convincing evidence to the contrary, Harman remains bound by the answers he provided during his guilty plea colloquy.[49] These statements are "presumed to be truthful"[50] and pose a "formidable barrier to a collateral attack on a guilty plea."[51]

---

[43] *Id.,*18–19.
[44] D.I. 80, at ¶31.
[45] D.I 97, at ¶26; *see* Truth-in-Sentencing Guilty Plea Form, D.I. 59.
[46] Tr., at 22:14-19, D.I. 78.
[47] D.I. 97, at 16.
[48] *Somerville v. State*, 703 A.2d 629, 631–32 (Del. 1997).
[49] *Id.,* at 632.
[50] *Id.*
[51] *Blackledge v. Allison,* 431 U.S. 63, 64 (1977).

15. Mr. Meyer stated that he "believe[d] Mr. Harman will be entering this plea knowingly, intelligently, and voluntarily[.]"[52] Harman himself concedes that "[he] told the Court that he freely and voluntarily decided to plead guilty to the charges[.]"[53] Harman also stated that he understood that by pleading guilty he was waiving an array of constitutional rights,[54] asserted that he was neither threated nor coerced into pleading guilty[55] and that he was satisfied with Mr. Meyer's representation.[56]

16. It also bears repeating that while Harman expressed some confusion during the colloquy, the Court did not allow Harman's confusion to stand; it permitted counsel to re-explain the nuances of the inquiry.[57] Having reviewed the plea colloquy, the Court finds that each of Harman's contentions were adequately and appropriately addressed at the time. He is bound by his in-court representations. So, just as the trial judge did when the plea was entered, this Court finds that Harman entered his guilty plea knowingly, intelligently, and voluntarily.

17. **Harman does not have a basis to establish factual or legal innocence.** Criminal defendants remain presumptively bound by their

---

[52] Tr. at 9:3–4, D.I. 78.
[53] D.I. 97, at ¶21.
[54] *Id.*
[55] Tr., at 12:5–10, D.I. 78.
[56] *Id.*
[57] *Id., passim.*

representations to the Court.[58] So, after pleading guilty, a defendant must present "some other support" to overcome a guilty plea and to assert innocence.[59]

18. During his plea colloquy, Harman admitted his guilt as to each offense.[60] In his latest filing, Harman also concedes that he does not have any new evidence and that "[he] has little or no basis to assert legal innocence."[61] Therefore, there is no justification to allow him to withdraw his guilty plea on this basis.

19. **Harman had effective legal counsel throughout his proceedings.** To prevail on his ineffective assistance of counsel claim, Harman must satisfy the two-prong standard established by *Strickland v. Washington*.[62] He must show that: (1) his "counsel's representation fell below an objective standard of reasonableness;" and (2) that counsel's actions were so prejudicial "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'"[63] When evaluating counsel's performance, "[a] court must indulge a *strong presumption* that counsel's conduct falls within the wide range of reasonable professional assistance."[64]

---

[58] *Somerville*, 703 A.2d at 632.
[59] *State v. McNeill*, 2001 WL 392465, at * 3 (Del. Super. Ct. 2001) (citing *Russell v. State*, 734 A.2d 160 (table) (Del. 1999)).
[60] Tr., at 17:7–18:19, D.I. 78.
[61] D.I. 97, at 17.
[62] 466 U.S. 668 (1984); *see Albury v. State*, 551 A.2d 53, 58 (Del. 1988).
[63] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).
[64] *Strickland*, 466 U.S. at 669 (emphasis added); *see also Albury*, 551 A.2d at 59.

8

20.     In his *pro se* submission, Harman claimed that Mr. Meyer "coerced [him] into signing a plea forcing [his] hand" and that Mr. Meyer failed to respond to his inquiries.[65]    These blanket assertions are insufficient bases for granting withdrawal.

21.     In direct opposition to Harman's claims, Mr. Meyer states that he met with Harman and repeatedly explained the nuances of the plea.[66]  The trial judge also gave Harman opportunities to ask his attorney[67] and the Court questions.[68]  Mr. Meyer was available to meet, but Harman rejected these offers.[69]

22.     In his amended motion, Harman claims that Mr. Meyer told him that a continuance would not be granted on the day of trial, but that an accepted plea may be withdrawn and "operate in lieu of a continuance request[.]"[70]  The State counters that this "bare assertion" is neither supported by the plea transcript nor by Mr. Meyer's affidavit.[71]

23.     Mr. Meyer's affidavit undermines Harman's assertions about problematic communication and that a plea could function as a continuance.  In his

---

[65] D.I. 72.
[66] D.I. 105.
[67] Tr. 22:20–22, D.I. 78.
[68] Tr. 23:1–2, D.I. 78.
[69] Tr. 22–23, D.I. 78.
[70] D.I. 97, at ¶ 34.
[71] D.I. 102; *see* D.I. 105.

affidavit, Mr. Meyer states that he discussed each plea offer with Harman[72] and that "[a]fter … discussing [the December 3rd offer] at length with Counsel and having an opportunity to confer with his mother and grandmother, Mr. Harman indicated that he wished to accept the State's plea offer."[73] Mr. Meyer agrees that he told Harman that a continuance request made on the day of trial would likely be denied,[74] but denies informing Harman that withdrawing a guilty plea was a viable way of rescheduling the trial, stating, "This would not have been accurate or proper legal advice."[75]

24. Having considered the above arguments, the Court does not find that Harman satisfied his burden to show that Mr. Meyer's conduct fell below the "strong presumption" of "reasonable professional assistance."[76] So, Harman remains bound by his statements that he was satisfied with his counsel's performance and that he was neither forced nor coerced into pleading.[77]

---

[72] D.I. 105 at, ¶¶ 4, 6–9, 11.

[73] *Id.,* at ¶ 9.

[74] *Id.,* at ¶ 10.

[75] *Id.,* at ¶ 11.

[76] *See Strickland,* 466 U.S. at 669; *see also Albury,* 551 A.2d at 59

[77] *See Somerville,* 703 A.2d at 632. Harman also levied several allegations of constitutional violations. By voluntarily pleading guilty to the charges against him, Harman waived any claim to double jeopardy. (*Melton v. State,* 74 A.3d 654 (Table) (Del. 2013); *Downer v. State,* 543 A.2d 309, 312–13 (Del. 1988)). Harman's other *pro se* assertions of constitutional violations are similarly unavailing, providing no support for those claims. His Amended Motion does nothing more than reiterate these arguments beliefs without any further support. D.I. 80, at ¶ 28.

25. **Granting withdrawal would prejudice the State and unduly inconvenience the Court.** While it is true that "[o]ur Court is in the business of conducting trials,"[78] prejudice need not be considered "when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea."[79] Harman, as detailed above, failed to establish a "fair and just" reason to withdraw his guilty plea. Thus, the Court need not address this factor, but nonetheless, finds that the State would be prejudiced and resources would be unjustifiably expended if the motion were granted.

**THEREFORE**, Defendant Nathaniel Harman's Motion to Withdraw Guilty Plea is **DENIED**. A sentencing date shall be set.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

---

[78] *State v. Jones*, 2020 WL 5530332, at * 4 (Del. Super. Ct., 2020), *aff'd*, 276 A.3d 1053 (Del. 2022); *see* D.I. 97, at 18.
[79] *United States v. Jones*, 336 F.3d 245, 255 (3d Cir. 2003) (citing *United States v. Harris*, 44 F.3d 1206, 1210 (3d. Cir. 1995)).

11